AMERICAN STATES INSURANCE COMPANY v DEPARTMENT OF TREASURY

Docket Nos. 181244, 181252, 182534, 182535, 182536, 182537, 182538, 182539, 182540, 182542. Submitted July 16, 1996, at Lansing. Decided December 20, 1996, at 9:45 A.M. Leave to appeal sought.

American States Insurance Company and thirty-four other foreign insurers brought an action in the Court of Claims against the Department of Treasury, seeking partial refunds of retaliatory tax payments made pursuant to MCL 500.476a; MSA 24.1476(1) for one or more of tax years 1990, 1991, and 1992. In computing their Michigan tax burdens for purposes of determining their retaliatory tax liabilities, the insurers had excluded assessments for the Michigan Assigned Claims Facility paid pursuant to MCL 500.134(6)(g); MSA 24.1134(6)(g). When § 134(6)(g) was declared by the Court of Claims to be unconstitutional, the insurers had filed amended returns for their retaliatory tax liabilities, with assessments for the Assigned Claims Facility included in their Michigan tax burdens, thereby reducing their retaliatory tax liabilities. The department had denied the insurers' refund claims as untimely under MCL 205.27a(6); MSA 7.657(27a)(6), which provides in part that a claim for refund based upon the validity of a tax law shall not be paid unless the claim is filed within ninety days after the date set for filing a return. In their action, the insurers asserted that § 27a(6) violates due process and equal protection inasmuch as other claims for refund that do not involve the constitutionality of a tax law are allowed under MCL 205.27a(2); MSA 7.657(27a)(2) to be made within four years after the date set for filing a return. The court, Carolyn Stell, J., upheld the constitutionality of § 27a(6) and entered a judgment for the department. The insurers filed several appeals, which were consolidated by the Court of Appeals.

The Court of Appeals *held*:

1. Section 27a(6) does not violate the Due Process Clauses of the United States and Michigan Constitutions. US Const, Am XIV; Const 1963, art 1, § 17. Due process requires the provision of retrospective relief as part of the postdeprivation procedure available to a taxpayer who has paid taxes under a statute later determined to be invalid. However, a state may invoke procedural requirements to protect its interest in stable fiscal planning. The ninety-day limit

imposed by § 27a(6) is a constitutionally valid limitation on the plaintiff insurers' postdeprivation remedy.

2. Section 27a(6) does not violate the Equal Protection Clauses of the United States and Michigan Constitutions. US Const Am XIV; Const, 1963, art 1, § 2. The plaintiff insurers' equal protection claim is subject to a rational basis test, not to strict scrutiny, because the insurers are not members of a suspect class and § 27a(6) does not impinge upon their exercise of a fundamental right. The classification created by § 27a(6) is rationally based on the state's interest in protecting the state treasury from the effects of many refund claims following the preemption or invalidation of a state tax statue on constitutional grounds.

3. Section 27a(6) is a statute of limitations, not a notice provision. The plaintiff insurers' claim that § 27a(6) cannot be applied to them in light of restrictions placed on the application of notice provisions is without merit.

Affirmed.

TAXATION — REFUND CLAIMS — CONSTITUTIONAL LAW — DUE PROCESS — EQUAL PROTECTION.

The provision of the revenue act that states in part that a claim for refund based upon the validity of a tax law shall not be paid unless the claim is filed within ninety days after the date set for filing a return does not violate the due process and equal protection guarantees of the federal and state constitutions (MCL 205.27a[6]; MSA 7.657[27a][6]; US Const, Am XIV; Const 1963, art 1, §§ 2, 17).

*Bodman, Longley & Dahling, LLP* (by *James A. Smith* and *Christopher J. Dine*), for American States Insurance Company et al.

*McGinty, Jakubiak, Frankland, Hitch & Henderson, P.C.* (by *Kenneth P. Frankland*), for Maryland Casualty Company et al.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Kevin T. Smith*, Assistant Attorney General, for Department of Treasury.

Before: SAWYER, P.J., and BANDSTRA and M. . TALBOT,* JJ.

BANDSTRA, J. In these ten consolidated actions, thirty-five foreign insurance companies challenge the constitutionality of § 27a(6) of the revenue act, MCL 205.27a(6); MSA 7.657(27a)(6). The Court of Claims determined that § 27a(6) is constitutional, and we affirm.

This case was decided on the basis of a stipulation of facts filed by the parties. At issue are retaliatory tax payments made by the plaintiffs for one or more of tax years 1990, 1991, and 1992. See MCL 500.476a; MSA 24.1476(1). In computing plaintiffs' Michigan tax burden for those tax years, assessments for the Michigan Assigned Claims Facility were excluded under § 134(6)(g) of the Insurance Code, MCL 500.134(6)(g); MSA 24.1134(6)(g). Late in 1992, the Court of Claims determined that this subsection of the Insurance Code is unconstitutional, a decision that the Department of Treasury has not challenged.

Following that decision, plaintiffs filed amended returns for the tax years at issue. They sought refunds based on the recalculation of their retaliatory tax liability as determined by including, as a part of their Michigan tax burden, payments made to the Michigan Assigned Claims Facility. The department denied the claims as untimely under § 27a(6), which provides:

[A] claim for refund based upon the validity of a tax law based on the laws or the constitution of the United States or the state constitution of 1963 shall not be paid unless the

* Circuit judge, sitting on the Court of Appeals by assignment.

> claim is filed within 90 days after the date set for filing a
> return. [MCL 205.27a(6); MSA 7.657(27a)(6).]

This subsection is an exception to the general statute
of limitations that allows a taxpayer to claim a refund
within four years after the date set for filing an origi-
nal return. MCL 205.27a(2); MSA 7.657(27a)(2). Sub-
section 27a(6) thus treats "preemption claimants," i.e.,
those whose claims arose because a Michigan tax
statute has been preempted by a constitutional provi-
sion or federal law, differently than other refund
claimants.

Plaintiffs do not contend that, if constitutional,
§ 27a(6) is inapplicable to their claims. The depart-
ment does not contest that some refund will be owed
to plaintiffs, subject to audit of the claimed amounts,
if § 27a(6) is unconstitutional. The sole issue on
appeal is the constitutionality of § 27a(6).

### DUE PROCESS

Plaintiffs first argue that § 27a(6) violates the Due
Process Clauses of the United States and Michigan
Constitutions. US Const, Am XIV; Const 1963, art 1,
§ 17.[1] Under *McKesson Corp v Division of Alcoholic
Beverages & Tobacco*, 496 US 18, 36-39; 110 S Ct 2238;
110 L Ed 2d 17 (1990), the Due Process Clause is sat-
isfied if the state provided plaintiffs an adequate
predeprivation remedy (allowing them to avoid pay-
ing the contested tax) or postdeprivation remedy

---

[1] Plaintiffs do not argue that the Due Process Clause of either constitu-
tion provides broader protection than the other. Because the Due Process
Clause of the Michigan Constitution affords no greater protection than the
federal guarantee, *Saxon v Dep't of Social Services*, 191 Mich App 689,
698; 479 NW2d 361 (1991), we will review available federal precedents in
determining plaintiffs' due process claim.

(allowing them an opportunity to contest the tax after it was paid). Plaintiffs argue that neither a predeprivation nor a postdeprivation remedy was available; the state argues that both remedies were provided. Because either remedy would suffice to satisfy the Due Process Clause and because we conclude that an adequate postdeprivation remedy was provided, we need not consider whether an adequate predeprivation remedy was available.

In *McKesson, supra* at 44, a unanimous Supreme Court held that the Due Process Clause of the United States Constitution requires the provision of retrospective relief as part of the postdeprivation procedure available to a taxpayer who has paid taxes under a statute later determined to be invalid. However, the Court recognized the "concern that a State's obligation to provide refunds for what later turns out to be an unconstitutional tax would undermine the State's ability to engage in sound fiscal planning." *Id.* The Court specifically limited its holding as permitting a number of state options to address that concern:

> A State's freedom to impose various procedural requirements on actions for postdeprivation relief sufficiently meets this concern with respect to future cases. The State might, for example, provide by statute that refunds will be available only to those taxpayers paying under protest or providing some other timely notice of complaint; [or] . . . enforce relatively short statutes of limitations applicable to such actions . . . . The State's ability in the future to invoke such procedural protections suffices to secure the State's interest in stable fiscal planning when weighed against its constitutional obligation to provide relief for an unlawful tax. [*Id.* at 45; accord *id.* at 50.]

This language has been applied to uphold state refund procedures that require a taxpayer to challenge a tax within thirty days after payment of the tax, *Swanson v North Carolina*, 335 NC 674; 441 SE2d 537, 545 (1994), and that taxpayers protest a tax at the time of payment as a prerequisite to relief, *Jenkins v Missouri*, 962 F2d 762, 766 (CA 8, 1992).

Consistent with these precedents, we conclude that the ninety-day limitation period found in § 27a(6) is a constitutionally valid limitation on plaintiffs' postdeprivation remedy. Plaintiffs argue that a ninety-day statute is too short to fall within the "relatively short statutes of limitations" authorized by *McKesson*. However, *McKesson* also allows states to limit refunds "only to those taxpayers paying under protest," i.e., only to those taxpayers who contest the imposition of the tax on the date payment is required. Subsection 27a(6) is more lenient to taxpayers because it provides an additional ninety days beyond the date set for filing a return to claim a refund. We conclude that § 27a(6) passes due process muster under the standards of *McKesson*.[2]

### EQUAL PROTECTION

Plaintiffs further argue that § 27a(6), which treats preemption claimants differently than others seeking a tax refund, violates the Equal Protection Clauses of

---

[2] Plaintiffs also cite *Reich v Collins*, 513 US ___; 115 S Ct 547; 130 L Ed 2d 454 (1994). However, the holding of *Reich* is that a state may not engage in a "bait and switch" scheme, holding out what appears to be a postdeprivation remedy in the form of a tax refund statute and then declare that no such remedy exists after taxpayers make payments. Subsection 27a(6) has been in effect for all the tax years at issue here and no similar "bait and switch" allegation is at issue.

the United States and Michigan Constitutions.[3] US Const, Am XIV; Const 1963, art 1, § 2. Plaintiffs argue that the Court of Claims improperly used a rational relationship test in analyzing their equal protection claim. Further, they contend that, even if a rational relationship test is appropriate, the statute is unconstitutional under that standard.

When legislation is challenged as being in violation of the equal protection guarantee, it is subjected to judicial scrutiny to determine whether the goals of the legislation justify the differential treatment it authorizes. *Doe v Dep't of Social Services*, 439 Mich 650, 661-662; 487 NW2d 166 (1992). Different review standards apply to different kinds of cases. A rational basis standard is used for the review of most legislation, meaning that "a statute will not be struck down if the classification scheme it creates is rationally related to a legitimate governmental purpose." *Id.* at 662. On the other hand,

> in two situations the equal protection guarantee is less tolerant of legislation that creates a classification scheme—when the classification is based upon suspect factors (such as race, national origin, or ethnicity), or when the legislation that creates the classification impinges upon the exercise of a fundamental right. [*Id.*]

If a suspect class is being treated differentially by a statute or if the statute impinges upon the exercise of

---

[3] Plaintiffs do not suggest that either constitution provides different protection than the other. Michigan courts have concluded that the Michigan Constitution's equal protection guarantee should be interpreted as being consistent with the Equal Protection Clause of the United States Constitution. *Doe v Dep't of Social Services*, 439 Mich 650, 661-662; 487 NW2d 166 (1992). Accordingly, we will treat plaintiffs' equal protection claim with reliance upon and without differentiation between state and federal precedents.

a fundamental right, "strict scrutiny" is applied, and the statute will be upheld only if its classification scheme has been precisely tailored to serve a compelling governmental interest. *Id.*[4]

To determine whether the rational basis or the strict scrutiny test applies, we must consider two questions: whether plaintiffs are members of a suspect class and whether § 27a(6) impinges on the exercise of a constitutional right. To a certain extent, plaintiffs confuse these two questions. They argue that the strict scrutiny test should apply here because they are a class of persons whose claim to a tax refund rests upon a fundamental constitutional right, i.e., the right applied by the Court of Claims in the earlier decision voiding § 134(6)(g) of the Insurance Code. However, whether plaintiffs are a "suspect class" and whether § 27a(6) impinges upon the exercise of a fundamental right are different questions that must be analyzed separately for equal protection purposes. See *Cervantes v Guerra*, 651 F2d 974, 979-980 (CA 5, 1981) ("The determination of the degree of suspectness, and hence of the appropriate standard of review, depends on the characteristics of the group discriminated against; it is independent of the subject matter of the discrimination.").

With respect to the first question, a class is suspect and thus entitled to strict scrutiny only if it exhibits "the traditional indicia of suspectness: the class is . . . saddled with such disabilities, or subjected to such a

---

[4] Courts have recognized a "middle tier of heightened scrutiny" between the "rational basis" and "strict scrutiny" tiers. *Doe, supra* at 662-663, n 19. However, this middle tier has typically been applied to gender or mental capacity classifications not at issue here. *Id.* Further, while plaintiffs acknowledged this middle tier, they argued only for application of the strict scrutiny test.

history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process." *San Antonio Independent School Dist v Rodriguez*, 411 US 1, 28; 93 S Ct 1278; 36 L Ed 2d 16 (1973); accord, e.g., *Doe, supra* at 664, n 22; *People v McLeod*, 407 Mich 632, 663, n 9; 288 NW2d 909 (1980). Classes of persons considered "suspect" under this limiting definition include those defined by their race, ancestry, or alienage. *Hoffman v United States*, 767 F2d 1431, 1434 (CA 9, 1985); *Doe, supra* at 662.

Plaintiffs do not constitute a "suspect class" under these precedents. They have not been historically saddled with disabilities, subjected to unequal treatment, or rendered powerless by the political process. Instead of sharing such "traditional indicia of suspectness," plaintiffs are "a large, diverse, and amorphous class, unified only by the common factor" that they seek a tax refund because a subsection of the Insurance Code has been declared invalid. See *Rodriguez, supra*. Plaintiffs do not constitute a "suspect class" entitled to strict scrutiny of their equal protection claim.

Neither are plaintiffs entitled to strict scrutiny because § 27a(6) impinges upon the exercise of a fundamental right. "In determining whether . . . a particular right is deserving of strict scrutiny . . . , we look to the Constitution to see if the right infringed has its source, explicitly or implicitly, therein." *Plyler v Doe*, 457 US 202, 217, n 15; 102 S Ct 2382; 72 L Ed 2d 786 (1982). Strict scrutiny has been employed for statutes infringing upon important constitutional rights, including privacy, *Roe v Wade*, 410 US 113, 154-164; 93

S Ct 705; 35 L Ed 2d 147 (1973), marriage, *Zablocki v Redhail*, 434 US 374, 383-387; 98 S Ct 673; 54 L Ed 2d 618 (1978), voting, *Bullock v Carter*, 405 US 134, 144; 92 S Ct 849; 31 L Ed 2d 92 (1972), travel, *Shapiro v Thompson*, 394 US 618, 627; 89 S Ct 1322; 22 L Ed 2d 600 (1969), and freedom of association, *NAACP v Alabama*, 357 US 449, 460-463; 78 S Ct 1163; 2 L Ed 2d 1488 (1958). We conclude that, in contrast to these precedents, the right plaintiffs claim has been infringed upon by § 27a(6) is not significant enough to warrant strict scrutiny.

Striving mightily to stress the importance of the right at issue here, plaintiffs contend that § 27a(6) effectively denies them access to the courts for the purpose of raising constitutional arguments against Michigan's tax statutes. There are a number of problems with this characterization of what is at issue here. First, § 27a(6) does not impose a limitation exclusively on those with constitutional arguments against a tax statute; it also limits those who claim a tax statute is preempted by federal law.[5] Second and more importantly, plaintiffs have not been denied access to the courts, as evidenced by their previous successful lawsuit; they have simply been limited in their right to claim a tax refund from the department as a result of that lawsuit. Subsection 27a(6) thus imposes a limitation on claims for compensation in court. It does not, however, otherwise preclude judicial review of Michigan's tax statutes for

---

[5] In a brief footnote, plaintiffs point out that federal law only preempts state law because of the Supremacy Clause, implying without any authority that this somehow raises a federal preemption challenge to constitutional status. We are not convinced by this unsupported and undeveloped suggestion.

a determination of their constitutionality or consistency with federal law, or for other purposes. Subsection 27a(6) does not deny plaintiffs access to the courts although it does limit the remedies available to them in a judicial action. Plaintiffs' basic claim is that their right to a tax refund has been denied. We do not conclude that this is a fundamental right significant enough to warrant strict scrutiny. See *Bowman v Niagara Machine & Tool Works, Inc*, 832 F2d 1052, 1054 (CA 7, 1987); *Commonwealth v Gossum*, 887 SW2d 329, 335 (Ky, 1994).

Further, to subject § 27a(6) to strict scrutiny would be inconsistent with *Reich v State Hwy Dep't*, 386 Mich 617; 194 NW2d 700 (1972). In *Reich*, our Supreme Court applied a rational relationship test for equal protection purposes, notwithstanding the fact that the sixty-day notice provision at issue affected the plaintiffs' ability to bring a lawsuit.[6] Similarly, federal appellate courts have applied the rational relationship test, rather than strict scrutiny, to challenges against state statutes limiting plaintiffs from bringing actions in medical malpractice cases. See, e.g., *Gronne v Abrams*, 793 F2d 74, 77-79 (CA 2, 1986); *Montagino v Canale*, 792 F2d 554, 557-558 (CA 5, 1986); *Hoffman, supra* at 1435-1436; *Brubaker v Cavanaugh*, 741 F2d 318, 321 (CA 10, 1984); *DiAntonio v Northampton-Accomack Memorial Hosp*, 628 F2d 287, 291 (CA 4, 1980). "Since . . . the right to recovery of tort damages is not a fundamental right, strict scrutiny is not appropriate . . . ." *Hoffman, supra* at 1435. Similar to the right to recovery of tort damages, the

---

[6] Plaintiffs correctly point out that the plaintiffs in *Reich* did not advance a constitutional claim as a basis for the lawsuit, but, nonetheless, the plaintiffs' access to the courts was infringed upon.

right to recover a tax refund is not a fundamental right. See *Gossum, supra* (the rational basis test was applied to validate imposition of a two-year filing period against certain taxpayers who complained because others were allowed four years to file for a refund).

Having determined that a rational relationship test is appropriate, we further conclude that this test is satisfied. "[A] statute will not be struck down if the classification scheme it creates is rationally related to a legitimate governmental purpose." *Doe, supra.* A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it. A classification will stand unless it is shown to be essentially arbitrary. Few statutes have been found so wanting in rationality as to fail to satisfy the essentially arbitrary test. *Manistee Bank & Trust Co v McGowan,* 394 Mich 655, 668; 232 NW2d 636 (1975). The rational relationship standard of review "reflects the judiciary's awareness that 'it is up to legislatures, not courts, to decide on the wisdom and utility of legislation.' " *Gronne, supra* at 77.

The burden is on plaintiffs to show that § 27a(6) and its classification are without reasonable justification. *Manistee Bank, supra.* Plaintiffs have failed to meet this burden. Subsection 27a(6) treats claimants who claim a refund because a state statute has been preempted by federal law or a constitution differently than other claimants. The department argues that this is justified because preemption claims can be common to large groups of people and, thus, have an enormous effect on the state treasury. Protection of the state treasury is certainly a legitimate state purpose. *McKesson, supra* at 37, 50. The department's

common-sense reasoning that § 27a(6) helps protect the state treasury from devastating claims is, at least, "arguably true" and enough to justify the statute. *Hoffman, supra* at 1437; see, also, *Vance v Bradley,* 440 US 93, 112; 99 S Ct 939; 59 L Ed 2d 171 (1979).

Plaintiffs complain that others who are not subject to § 27a(6) might also bring claims common to large groups of taxpayers and thus present a similar threat to state coffers. As examples, plaintiffs point to litigation where large groups of taxpayers have argued that the department has incorrectly interpreted a statute. While that may well be the case, the classification made by § 27a(6) nonetheless "has some 'reasonable basis' [and] it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' " *Dandridge v Williams,* 397 US 471, 485; 90 S Ct 1153; 25 L Ed 2d 491 (1970). We must allow the Legislature "substantial latitude to establish classifications . . . that account for limitations on the practical ability of the State to remedy every ill." *Plyler, supra* at 216. " 'State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality.' " *Hoffman, supra* at 1435, quoting *McGowan v Maryland,* 366 US 420, 425-426; 81 S Ct 1101; 6 L Ed 2d 393 (1961). We do not conclude that the failure of § 27a(6) to perfectly fulfill its purpose means that it bears no rational relationship to that purpose sufficient to satisfy equal protection guarantees.[7]

---

[7] For similar reasons, we reject plaintiffs' claim that § 27a(6) should be adjudged in violation of the Equal Protection Clause because it does not

We conclude that the Court of Claims properly applied a rational basis test to plaintiffs' equal protection challenge. Further, we conclude that the Court of Claims properly found that this test was satisfied and that § 27a(6) does not violate the Equal Protection Clauses of the United States or Michigan Constitutions.

### NOTICE STATUTE PRECEDENTS

Finally, plaintiffs argue that § 27a(6) cannot be imposed against them under *Hobbs v Dep't of State Hwys*, 398 Mich 90; 247 NW2d 754 (1976), and *Carver v McKernan*, 390 Mich 96; 211 NW2d 24 (1973). We find these precedents inapposite. *Hobbs* and *Carver* did not consider statutes of limitation but, instead, considered notice periods, described as "devices . . . which have the effect of shortening the period of time set forth in" statutes of limitation. *Carver, supra* at 99. Our Supreme Court reasoned that "the only legitimate purpose we can posit for [a] notice provision" is the prevention of "actual prejudice to the state due to lack of notice." *Hobbs, supra* at 96. Accordingly, in *Hobbs* and *Carver*, the Court held that a notice provision could not be applied to bar a lawsuit in the absence of some showing that the defendant had been prejudiced by the lack of notice.

Subsection 27a(6) is a statute of limitations, not a notice provision. It does not have as its purpose the prevention of actual prejudice to the state in having to defend against stale claims. Its purpose, instead, is to protect the state treasury from large claims that could endanger the fiscal integrity of the state. This is

---

afford the same treatment to affected taxpayers as that provided certain federal retirees under MCL 205.27a(7); MSA 7.657(27a)(7).

a legitimate purpose in itself, apart from any goal of preventing "actual prejudice" to the state in defending against a state refund claim. Subsection 27a(6) not being a notice provision and the prevention of actual prejudice not being the concern at issue, nothing in *Hobbs* or *Carver* suggests that we can deny the state treasury the protection afforded by § 27a(6).

We affirm.